In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-1651 & 11-1618

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HENRY ROBERTSON and ELIZABETH ROBERTSON,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cr-00067—**George W. Lindberg**, *Judge.*

ARGUED SEPTEMBER 27, 2011—DECIDED NOVEMBER 16, 2011

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In the late 1990s, Henry and
Elizabeth Robertson were involved in a Chicagoland
mortgage fraud scheme. Through their company,
Elohim, Inc., the Robertsons bought residential prop-
erties and then sold those properties to nominee buyers
at inflated prices. Along the way they provided lenders
with false information about the buyers' finances, sources
of down payments, and intentions to occupy the resi-

dences. The scheme involved 37 separate fraudulent transactions and resulted in a net loss of more than $700,000 to various lenders.

After the scheme collapsed, the Robertsons went bankrupt but were not charged with any crimes. They went about the laudable business of rebuilding their lives and rehabilitating themselves. Elizabeth continued to work as a full-time nurse in a hospital's pediatric intensive care unit. Henry worked as a full-time cable installer and technician. They raised their three children and became fully engaged in their community. Each volunteered as a coach in youth sports, and Henry assisted in fighting crime in their neighborhood by serving as president of their block club. Neither Henry nor Elizabeth engaged in any criminal activity from 1999 to 2010, apart from a reckless driving offense by Henry in 2002.

But the Robertsons could not escape their past. On the day before the ten-year statute of limitations for one crime would have expired, the government charged the Robertsons with one count of wire fraud, 18 U.S.C. § 1343, and two counts of bank fraud, 18 U.S.C. § 1344. The Robertsons both pled guilty to a single count of wire fraud, and both were sentenced on March 2, 2011. The sentencing court based their sentences on the 2010 United States Sentencing Guidelines that were then in effect. Elizabeth was sentenced to 41 months in prison, and Henry was sentenced to 63 months. They were also ordered to pay more than $700,000 in restitution.

The Robertsons appeal from their sentences on several grounds. First, they argue that the district court's

use of the more severe 2010 Sentencing Guidelines violated the ex post facto clause of the Constitution, and they urge us to overrule *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006), which held that the ex post facto clause does not apply to changes in the now-advisory federal Sentencing Guidelines. They also argue that their roles in the mortgage fraud scheme did not warrant a 2-level guideline enhancement imposed by the sentencing court pursuant to U.S.S.G. § 3B1.1(c) for their roles in organizing the scheme. We reject these arguments. But we agree with the Robertsons' final argument, that the sentencing judge failed to consider adequately their unusually strong evidence of self-motivated rehabilitation. For this reason, we vacate their sentences and remand for resentencing. Because we remand, we do not address the Robertsons' additional argument that their sentences were substantively unreasonable.

I. *Sentencing Guidelines and the Ex Post Facto Clause*

The Robertsons argue that the district court's reliance on the 2010 Sentencing Guidelines in determining their guideline sentencing ranges violated the federal ex post facto clause of the Constitution. The 2010 Guidelines advised a higher offense level than the 1998 Guidelines, which were in effect when they committed their crimes. The 1998 Guidelines would have produced a recommended offense level of 19, compared to a recommended

offense level of 22 under the 2010 Guidelines.[1] Elizabeth's recommended range under the 2010 Guidelines was 41 to 51 months in prison, but under the 1998 Guidelines, her range would have been 30 to 37 months. Henry's recommended range under the 2010 Guidelines was 63 to 78 months. His 1998 range would have been 46 to 57 months. We review their argument on this point for plain error.[2]

---

[1] Under the 1998 Guidelines, the wire fraud charge had a base offense level of 6, with a 10-level increase for the amount of loss, and a 2-level enhancement for fraud with more than one victim. U.S.S.G. § 2F1.1(a), (b)(1)(K), and (b)(2) (1998). Under the 2010 Guidelines, wire fraud carried a base level of 7, with a 14-level increase based on the amount of loss. U.S.S.G. § 2B1.1(a), (b)(1)(H) (2010). The 2-level enhancement for use of sophisticated means, § 2B1.1(b)(9)(C), the 2-level enhancement for an aggravating role, § 3B1.1, and a 3-level reduction for acceptance of responsibility, § 3E1.1(b), would have applied under either set of Guidelines.

[2] The government argues that the Robertsons waived their ex post facto argument by failing to object to the application of the 2010 Guidelines and by failing to make their constitutional argument to the sentencing judge. We disagree. The government has not suggested any possible strategic justification for the Robertsons' failure to preserve the issue before the sentencing court, which, under this circuit's precedent, would have been futile. Under this circumstance, we can assume forfeiture rather than waiver, and accordingly we apply the plain error standard. See *United States v. Anderson*, 604 F.3d 997, 1001-02 (7th Cir. 2010) (examining forfeiture and

(continued...)

Article I of the United States Constitution provides that neither Congress nor any State shall pass any "ex post facto Law." See Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. An unconstitutional ex post facto law places the defendant at a substantial disadvantage compared to the law as it stood when he committed the crime, by either changing the definition of the crime, increasing the maximum penalty for it, or imposing a significant risk of enhanced punishment. See, *e.g.*, *Garner v. Jones*, 529 U.S. 244, 255-56 (2000); *California Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995); *Miller v. Florida*, 482 U.S. 423, 432 (1987); *Weaver v. Graham*, 450 U.S. 24, 29 (1981); *Lindsey v. Washington*, 301 U.S. 397, 401-02 (1937). Here, the Robertsons' advisory sentencing ranges increased from 30-37 months to 41-51 months and 46-57 months to 63-73 months, respectively. The issue is whether that change in the advisory guideline ranges imposed a significant risk of enhanced punishment forbidden by the ex post facto clause.

When the federal Sentencing Guidelines were mandatory, a later increase in a Guideline range certainly posed a "substantial risk" that a defendant's penalty would be more severe. More than a "substantial risk," a harsher punishment was highly probable, as the Guidelines acknowledge in § 1B1.11 (directing use of Guidelines in

---

[2] (...continued)

waiver). However, our standard of review is ultimately not material. If we addressed the Robertsons' argument de novo, our conclusion would be the same.

effect at time of crime if court determines that use of current Guidelines would violate ex post facto clause). Addressing this problem under a state's system of sentencing guidelines, the Supreme Court held in *Miller v. Florida* that the ex post facto clause was violated when the sentencing judge had to provide clear and convincing written reasons for departing from the higher mandatory Guideline range. Under that legal standard, a defendant would be foreclosed from "challeng[ing] the imposition of a sentence longer than his presumptive sentence under the old law." 482 U.S. at 432-33.

With the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), however, the federal Guidelines became advisory. It is no longer certain that an increased Guideline range poses a "substantial risk" that a defendant's sentence will be harsher than it would have been. Now, sentencing judges have broad discretion to impose a non-guideline sentence by weighing the factors under § 3553(a).

We explained this reasoning in *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006), holding after *Booker* that the ex post facto clause is not implicated by changes in advisory Guidelines because the ex post facto clause applies only to laws and regulations that are binding. We acknowledged that sentencing judges will no doubt be influenced by the Guidelines, but explained:

> The judge is not required — or indeed permitted — to "presume" that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct. All he has to do

is consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. § 3553(a). His choice of a sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review. The applicable guideline nudges him toward the sentencing range, but his freedom to impose a reasonable sentence outside the range is unfettered.

*Id.* at 794-95 (internal citations omitted); see also *Gall v. United States*, 552 U.S. 38, 50 (2007) (in calculating the sentence, the judge "may not presume that the Guidelines range is reasonable"); *Rita v. United States*, 551 U.S. 338, 351 (2007) ("the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply").

After *Booker*, advisory Guidelines do not limit a sentencing judge's discretion, and in a discretionary sentencing regime, it would be incongruous to hold that later, more severe Guidelines hold a "substantial risk" of a harsher sentence. Put another way, a sentencing court may take advice from the Sentencing Commission, regardless of when that advice was issued. A sentencing court may consider past and present advisory Guidelines, and even proposed advisory Guidelines that have not yet taken effect. We have reaffirmed our decision in *Demaree* many times since, see, *e.g., United States v. Holcomb*, F.3d ___, 2011 WL 3795170, *4 (7th Cir. Aug. 24, 2011); *United States v. Favara*, 615 F.3d 824, 829 (7th Cir. 2010); *United States v. Panice*, 598 F.3d 426,

435 (7th Cir. 2010); and *United States v. Nurek*, 578 F.3d 618, 625-26 (7th Cir. 2009), and we will not overrule it here.

We acknowledge that even though the Sentencing Guidelines are now advisory, several other circuits have found that the Guidelines still play a powerful "anchoring" role in determining a defendant's ultimate sentence and thus have held that use of later, more severe Guidelines still creates an ex post facto problem. See, *e.g.*, *United States v. Wethereld*, 636 F.3d 1315, 1322 (11th Cir. 2011); *United States v. Ortiz*, 621 F.3d 82, 87 (2d Cir. 2010); *United States v. Lewis*, 606 F.3d 193, 199 (4th Cir. 2010); *United States v. Lanham*, 617 F.3d 873, 889-90 (6th Cir. 2010); *United States v. Turner*, 548 F.3d 1094, 1099-1100 (D.C. Cir. 2008). For the above reasons, we respectfully disagree and follow the analysis set forth in *Demaree*. On this ground, we affirm.

II.  *Organizing Role in the Offense*

The Robertsons next argue that the district judge erred in imposing a 2-level enhancement under the Guidelines pursuant to U.S.S.G. § 3B1.1, which calls for the enhancement if a defendant was an "organizer," "leader," "manager," or "supervisor" in any criminal activity. They contend that their respective roles in the scheme fell short of the threshold necessary for the aggravating role enhancement of § 3B1.1 to apply. We review de novo the district court's interpretation and application of the Guidelines. *United States v. Johnson*, 612 F.3d 889, 892 (7th Cir. 2010). We review a district court's factual deter-

mination of a defendant's role in the offense for clear error, and we will reverse only if our review of all the evidence leaves us with the definite and firm conviction that a mistake has been made. See *United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007).

The enhancement permitted under the Guideline is intended "to penalize more heavily those defendants who bear greater responsibility for crimes involving many individuals, both to reflect their greater degree of culpability and in recognition that such individuals are likely to profit more from the crime and pose a greater danger to the community and risk of recidivism." *United States v. Wasz*, 450 F.3d 720, 729 (7th Cir. 2006); see also U.S.S.G. § 3B1.1, cmt. To this end, U.S.S.G. § 3B1.1 authorizes a 4-level enhancement if the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," a 3-level enhancement if the defendant was "a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive," and a 2-level enhancement if the defendant was "an organizer, leader, manager, or supervisor in any [other] criminal activity."

The Guidelines provide seven factors that courts may consider in applying the enhancement: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and

scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, cmt., n.4. However, no single § 3B1.1 factor is essential in determining whether the adjustment applies, and a court need not assign equal weight to each factor. See *United States v. Vallar*, 635 F.3d 271, 280 (7th Cir. 2011); *United States v. Anderson*, 580 F.3d 639, 649 (7th Cir. 2009).

Two lines of authority exist in our circuit concerning whether or not a defendant must have exerted "control" over other participants for the enhancement to apply. Compare, *e.g.*, *Anderson*, 580 F.3d at 650 (stating that § 3B1.1 enhancement "cannot be applied unless the defendant exercised some control over others involved in the commission of the offense") (quotation marks and citations omitted), and *United States v. Fones*, 51 F.3d 663, 668-70 (7th Cir. 1995) (holding that § 3B1.1 enhancement was improperly applied where defendant lacked control of or authority over another participant), with *United States v. Pira*, 535 F.3d 724, 730 (7th Cir. 2008) (stating it is not necessary "'that the defendant exercised control, so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role'"), quoting *United States v. Carrera*, 259 F.3d 818, 827 (7th Cir. 2001). The Robertsons argue that a showing of control is necessary for the enhancement to apply, relying primarily on a case with similar facts from the D.C. Circuit, *United States v. Quigley*, 373 F.3d. 133 (D.C. Cir. 2004), and that no such showing has been made here. The government, on the other hand, argues that a showing of control is not necessary and that we should follow the *Carrera* line of cases.

We need not resolve this tension here. Under either rationale, the clear error standard of review that governs this issue on appeal is decisive. We believe the evidence shows that the Robertsons played a sufficiently aggravating role in the scheme, and we find that the court did not clearly err in applying a 2-level enhancement pursuant to § 3B1.1(c).

Thirty-seven times, the Robertsons, through their company, Elohim, Inc., acted as the sellers in fraudulent real estate transactions. Pursuant to their plea agreements, the Robertsons admitted that, to facilitate this scheme, they "recruited nominee buyers by promising that, as nominees, they would not have to make down payments, or occupy the residence." They caused inquiries to credit reporting agencies concerning the credit histories of the nominee purchasers, and they provided the nominee purchasers with funds to be used for the down payments, as well as fraudulent documents such as false gift affidavits and bills of sale. Elizabeth specifically admitted that she "instruct[ed] the nominee buyers to falsely represent the source of the funds," and both admitted that their scheme was conducted through the "use" of nominee buyers.

Based on this evidence, the district court found that the defendants "assisted and directed nominee buyers in how to submit fraudulent documents in order to carry out the fraudulent real estate transactions." We acknowledge that the degree of control they exerted over the nominee buyers may have been limited, and the scheme involved many other participants who were not

charged. The evidence did not require the court to impose the 2-level enhancement. But the nominee buyers still answered to the Robertsons when it came to falsifying the information provided to the lenders to facilitate the scheme, and thus the buyers can fairly be said to have operated under the Robertsons' control. The Robertsons' roles were sufficient to allow the district court to apply the 2-level aggravating role without committing clear error. We affirm the district court on this basis.

III. *Consideration of Rehabilitation*

Finally, the Robertsons argue that the district court failed to consider adequately their unusually strong evidence of rehabilitation in imposing its sentence. On this point, we agree.

The Supreme Court recently reiterated "the principle that 'the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011), quoting *Williams v. New York*, 337 U.S. 241, 247 (1949). "Highly relevant — if not essential — to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Pepper*, 131 S. Ct. at 1235, quoting *Williams*, 337 U.S. at 247. This aim is codified in 18 U.S.C. § 3553(a), which requires that any sentence imposed be "sufficient, but not greater than necessary" to serve the sentencing goals of punishment, deterrence, protection of the public, and rehabilitation, and which requires the court to consider "the history and

characteristics of the defendant." Adequate considera-
tion of a defendant's evidence of rehabilitation fits
squarely within these parameters. Demonstrated self-
motivated rehabilitation is direct and relevant evidence
of "the need for the sentence imposed . . . to afford ade-
quate deterrence to criminal conduct; to protect the
public from further crimes of the defendant; [and to]
provide the defendant with needed educational or voca-
tional training . . . or other correctional treatment in the
most effective manner." 18 U.S.C. § 3553(a)(2)(B)-(D).

The power of evidence of self-rehabilitation was
evident in *Gall*, where the Supreme Court noted that it
was reasonable for the district court to attach "great
weight" to a defendant's decision to change his life
and withdraw from a drug distribution conspiracy:
"Compared to a case where the offender's rehabilitation
occurred after he was charged with a crime, the District
Court here had greater justification for believing [the
defendant's] turnaround was genuine, as distinct from
a transparent attempt to build a mitigation case." 552
U.S. at 57. Such self-motivated rehabilitation "lends
strong support to the conclusion that imprisonment [is]
not necessary to deter [a defendant] from engaging in
future criminal conduct or to protect the public from
his future criminal acts." *Id*. at 59.

In the Robertsons' case, the government did not charge
the defendants with their crimes until nearly ten years
had passed. By the time they were sentenced, it was
nearly twelve years after the fact. Those delays were not
contrary to law, but they meant in the Robertsons' case

that the relevant sentencing factors looked much different than they might have a decade earlier. At their sentencing in 2011, they presented unusually strong evidence of their self-motivated efforts to rehabilitate themselves. Apart from Henry's conviction for reckless driving in 2002, both Henry and Elizabeth had refrained from committing any other criminal offenses. Each maintained full-time, gainful employment. Elizabeth had overcome a particularly traumatic childhood to become a pediatric intensive care nurse and was, at the time of sentencing, on the brink of retirement after three decades of service. Henry worked as a cable installer and technician. They had raised three children, seeing two through college and into graduate school and seeing the third serve in the military. Henry had taken an active role in preventing crime in his neighborhood as president of its block club, and both Henry and Elizabeth volunteered as youth sports coaches. The Robertsons were compliant with pretrial supervision. Even the government acknowledged that, over a "relatively significant amount of time," the Robertsons had "demonstrate[d] to the Court, to society, that they can stay out of trouble."

In short, the Robertsons' principal argument at sentencing was that they had rehabilitated themselves of their own accord. Our review of the record persuades us that the sentencing court failed to address this evidence in that context. Concerning the Robertsons' criminal histories, the court acknowledged that Henry had not committed any crimes since 2002 and that Elizabeth lacked any criminal history. But other than noting, without further detail or explanation, that Elizabeth had

provided "excellent service . . . as a professional in the medical field," it is not apparent that the sentencing court considered the Robertson's unusually strong evidence of self-motivated rehabilitation over the past ten years. Because the court's silence makes it impossible to discern that it appropriately balanced the Robertsons' rehabilitated lives and characters against the seriousness of their offense for purposes of 18 U.S.C. § 3553(a), we find this minimal treatment to be insufficient.[3]

Separate from but related to the Robertsons' joint argument regarding their rehabilitation evidence, Henry argues that the district court failed to explain adequately why it rejected his argument that Guidelines calculation substantially overstated his criminal history in light of his post-offense rehabilitation. Sentencing policy recognizes that a within-Guidelines sentence may be inappropriately high when "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). Here, Henry's convictions that resulted in criminal history points took place more than 20 years ago, during a period when Henry was struggling with substance abuse. Since overcoming his addictions, Henry's only criminal acts

---

[3] We note, however, that the district judge agreed to modify Elizabeth's date to report to prison to allow her to continue to work as a nurse long enough to become eligible for retirement benefits.

were the charged mortgage fraud scheme and a single reckless driving offense. The probation office and the government agreed that it would be appropriate to treat Henry's criminal history as overstated due to the passage of time, yet the district court's only acknowledgement of this argument was its comment that Henry was not "youthful or immature" when he committed the reckless driving offense in 2002. Henry's age and relative maturity in 2002 were beside the point. The reckless driving offense was so minor that it did not even count toward his criminal history calculation, and the conviction was nearly a decade old at the time of Henry's sentencing. The issue the court should have addressed is whether Henry's criminal history reflects the person he has become since committing the charged offense in light of his intervening evidence of self-motivated rehabilitation. Here too, the court's silence warrants remand.

A sentencing court need not comprehensively discuss each of the factors listed in 18 U.S.C. § 3553(a), but it must give the reasons for its sentencing decision and address all of a defendant's principal arguments that "are not so weak as not to merit discussion." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005); *United States v. Kilgore,* 591 F.3d 890, 893 (7th Cir. 2010) ("In determining a reasonable sentence, the district court need not comprehensively discuss all of the 18 U.S.C. § 3553(a) factors, but must explain its decision and address nonfrivolous sentencing arguments."). Substantial and reliable evidence of genuine rehabilitation presents a non-frivolous argument for imposing a sentence below the Guideline

range. See *Pepper*, 131 S. Ct. at 1235; *Gall*, 552 U.S. at 57. Such arguments must be properly addressed and weighed by the sentencing court. A sentencing court's consideration of a defendant's non-frivolous arguments in favor of mitigation certainly may be brief, but it must also be meaningful. As we explained in *Cunningham*: "Whenever a district judge is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he exercised his discretion, that is, that he considered the factors relevant to that exercise." 429 F.3d at 679. Here, we cannot determine whether the sentencing judge abused his discretion by, for example, overemphasizing the seriousness of the Robertsons' offense or Henry's criminal history or underemphasizing their rehabilitation in balancing the § 3553(a) factors, because it is not apparent from the sentencing transcript that such a balancing took place. Accordingly, we vacate and remand for resentencing.

On remand, the district court may not revisit the original guideline calculations using the 2010 Sentencing Guidelines. However, the court may consider the differences between the 1998 Guidelines and the 2010 Guidelines as part of its consideration of the § 3553(a) factors, and the court should carefully weigh and explain its consideration of the Robertsons' evidence of self-motivated rehabilitation.

VACATED AND REMANDED.