NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 24, 2012
Decided May 15, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3484

| | |
|---|---|
| UNITED STATES OF AMERICA, | United States District Court for the |
| *Plaintiff-Appellee,* | Western District of Wisconsin. |
| | |
| *v.* | No. 09-CR-75-BBC-01 |
| | |
| CARL HODGES, | Barbara B. Crabb, |
| *Defendant-Appellant.* | *Judge.* |

**O R D E R**

Carl Hodges was convicted of possessing with intent to distribute heroin and sentenced to 78 months' imprisonment. He argues that the district court improperly increased his base offense level under U.S.S.G. § 3B1.1(c) for being a leader, organizer, manager, or supervisor in the criminal activity. Because the district judge did not err in concluding that Hodges used others to deliver heroin and return cash to him, we affirm the judgment.

During a traffic stop in 2009, officers located 25 bags of heroin on the front seat of Hodges' car. Hodges admitted that the heroin was his and that he sold it to support his own habit. At the time he was on supervised release for an earlier offense, and a petition to revoke his supervision was filed. A grand jury indicted him with possessing with intent to

distribute heroin, in violation of 21 U.S.C. § 841(a)(1). In a written plea agreement, Hodges pleaded guilty in exchange for the government's agreement to seek dismissal of the petition to revoke his supervised release.

At Hodges' first sentencing hearing, the court calculated Hodges' guidelines range at 110 to 137 months, and sentenced him to 130 months. Despite the plea agreement, the government did not move to dismiss the supervised-release petition. Hodges appealed, and his counsel sought permission to withdraw under *Anders v. California*. Hodges alerted his attorney that he wished to vacate his guilty plea, and argued in his Rule 51(b) response that his plea was involuntary because the government had breached the plea agreement by not moving to dismiss the supervised-release petition. This court agreed that Hodges had a nonfrivolous issue to appeal and denied counsel's motion. *See United States v. Hodges*, No. 09-3745 (7th Cir. Sept. 21, 2010). The parties then jointly moved to remand the case so that Hodges could withdraw his guilty plea.

On remand the court appointed new counsel, and Hodges withdrew his plea. He then pleaded guilty in another written plea agreement, which this time contained no promises about the revocation of supervised release. A probation officer amended Hodges' presentence report and calculated the same guidelines range as the first sentencing.

The presentence report included statements from witnesses who distributed heroin with Hodges and described his substantial role in the criminal activity.[1] Erin Fay, for instance, admitted that she picked up heroin from Hodges 50 to 100 times (up to 3 bags at a time) and that Hodges fronted heroin to her. Fay, as confirmed by two witnesses, was a runner for Hodges, selling heroin to 15 to 20 people and bringing Hodges a couple of thousand dollars each day. Bea Curry admitted (and one of her buyers confirmed) that she purchased heroin from Hodges daily to middle heroin deals to buyers who came to her because they knew she had a heroin source; as payment, she received a bag of heroin from the buyers and a bag of heroin and money from Hodges. On at least one occasion, Hodges drove Curry to a predetermined location to sell heroin. Thomas Garland admitted that he too middled heroin for Hodges—people went to Garland for heroin and he called Hodges

---

[1]Several of the witnesses "middled" drugs for Hodges or stated that he "fronted" drugs to them. "'Fronting' drugs means supplying them without charge and collecting payment when the recipient sells them and earns enough money to pay the debt," *United States v. Vaughn*, 585 F.3d 1024, 1027 n.1 (7th Cir. 2009), and "an individual middling a drug transaction serves as a 'runner' between the drug supplier and the ultimate purchaser and, as payment, receives a small portion of the drugs to supply his or her own drug habit," *United States v. Sturdivant*, 244 F.3d 71, 74 n.1 (2d Cir. 2001).

for the supply—and kept a bag for himself as payment. Finally, Sophie Thomas stated that Hodges gave her 15 bags of heroin multiple times per week that she sold but did not pay Hodges back; others identified her as a middler for Hodges. Hodges also sold drugs to at least three other witnesses.

Before sentencing, Hodges challenged the use of those witness statements to both support the § 3B1.1(c) increase and determine his base offense level. He objected to the relevant conduct quantity, arguing that Curry and Thomas, who provided much of the information about drug amounts, were unreliable, and so the government could not prove he was responsible for 368 grams of heroin. He also objected to the increase for his own role in the offense, U.S.S.G. § 3B1.1(c), pointing out that the witness statements did not show his role was one of a leader. The government conceded that it could not locate Curry or Thomas to testify at the sentencing hearing (limiting its ability to prove Hodges responsible for more than 40 to 60 grams of heroin), but it continued to press for the two-level increase under § 3B1.1(c) based on testimony, from other independently interviewed witnesses, that Hodges had runners who carried out heroin transactions for him.

This time the district court calculated a total offense level of 19 based on an offense level of 20 for the lower drug amounts, *id.* § 2D1.1(c)(9), the 2-point increase for his role in the offense, *id.* § 3B1.1(c), less 3 points for acceptance of responsibility, *id.* § 3E1.1. In concluding that § 3B1.1 applied, the court focused on Hodges' use of others to carry out his heroin sales:

> THE COURT: . . . I think there's enough information from people about Mr. Hodges using others to deliver heroin and return cash to him that it is appropriate to consider that he was an organizer, leader, manager or supervisor in the offense. It is true that Ms. Curry and Ms. Thomas are unavailable, but they did give testimony or told the government certain things before they disappeared and those—the things they told the government were corroborated by other people.
>
> So I'm not using their information to determine the heroin amount, but I am using it to show that Mr. Hodges was—is to have two-level increase in his base offense level because he was a manager.

With an offense level of 19 and a criminal history of Category VI, Hodges' guidelines range was 63 to 78 months, and the court imposed a sentence at the top of that range.

On appeal, Hodges argues that the district court erred by applying the two-level adjustment under § 3B1.1(c) for his role in the offense. The district court erred, he says, by

relying on the witness statements in the presentence report; in his view, the statements were non-specific and the witnesses should have been produced for cross-examination.

This argument fails because the district court may determine a sentence by considering any evidence that bears "sufficient indicia of reliability." U.S.S.G. § 6A1.3(a); *United States v. Hankton*, 432 F.3d 779, 789–90 (7th Cir. 2005). For instance, a district court may rely on presentence reports containing even double hearsay, so long as it finds the statements reliable. *See United States v. Isom*, 635 F.3d 904, 908 (7th Cir. 2011); *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007). Curry and Thomas were unavailable to testify to their uncorroborated statements regarding drug amounts (and so the court did not rely upon them to determine Hodges' relevant conduct), but their statements about Hodges' role in the offense were corroborated. Three witnesses confirmed Thomas' statements that she middled heroin for Hodges. Two witnesses corroborated Curry's statement that Hodges supplied Fay with heroin. And others independently painted a similar picture of Hodges' role in the heroin distribution. Because the statements in the presentence report about Hodges' involvement in the offense were consistent and corroborated, the court did not err in relying on them at sentencing.

Hodges also maintains that the district court did not have enough information to justify applying § 3B1.1(c). According to Hodges, the evidence shows that he sold heroin but not that he recruited anyone or brokered any future sales.

The "central concern" of § 3B1.1 is the defendant's relative responsibility for the commission of the offense. *See United States v. Mendoza*, 576 F.3d 711, 717 (7th Cir. 2009); *United States v. Howell*, 527 F.3d 646, 649 (7th Cir. 2008). The court considers factors such as the defendant's decision-making authority, nature of participation, recruitment of accomplices, right to a larger share of the profits, role in planning and organizing, scope of illegal activity, and control and authority exercised over others. U.S.S.G. § 3B1.1, cmt., n.4; *see United States v. Vasquez*, 673 F.3d 680, 685 (7th Cir. 2012).

We have acknowledged recently that two lines of authority exist concerning whether a defendant must have exerted "control" over other participants for the increase to apply. *United States v. Robertson*, 662 F.3d 871, 877 (7th Cir. 2011). Under one line of cases, the adjustment "cannot be applied unless the defendant exercised some control over others involved in the commission of the offense." *United States v. Anderson*, 580 F.3d 639, 649 (7th Cir. 2009); *see United States v. Gracia*, 272 F.3d 866, 877 (7th Cir. 2001); *see also United States v. Carrero-Hernandez*, 643 F.3d 344, 350–51 (1st Cir. 2011) (control over other criminal actors required); *United States v. Quigley*, 373 F.3d 133, 139 (D.C. Cir. 2004) (control required). Another line of cases instructs that control is not required, and the adjustment is appropriate if the criminal activity involved more than one participant and the defendant

"played a coordinating or organizing role." *United States v. Doe*, 613 F.3d 681, 687 (7th Cir. 2010); *see United States v. Martinez*, 520 F.3d 749, 752 (7th Cir. 2008); *see also United States v. Gaines*, 639 F.3d 423, 429 n.4 (8th Cir. 2011) (control not required); *United States v. Snow*, 663 F.3d 1156, 1162–63 (10th Cir. 2011) (control required to be a leader, not required to be an organizer); *United States v. Dupree*, 323 F.3d 480, 494 (6th Cir. 2003) (control not required).

As in *Robertson*, we need not resolve the tension in this case because Hodges has not shown that the district court's conclusion was clearly erroneous under either rationale. *See United States v. Hatten-Lubick*, 525 F.3d 575, 580–81 (7th Cir. 2008); *United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007). The record supports the district court's finding "about Hodges using others to deliver heroin and return cash to him." Hodges supplied heroin to Fay, Curry, Garland, and Thomas. Providing heroin to at least four other participants who in turn sold it to others gives Hodges greater culpability for the offense and a "sufficiently aggravating role in the scheme." *Robertson*, 662 F.3d at 877; *see also Martinez*, 520 F.3d at 752 ("Orchestrating or coordinating activities performed by others makes a particular defendant a manager or supervisor."). Curry and Garland had their own buyers and called Hodges when they needed drugs, but both received drugs as their payment; presumably Hodges was the one turning a profit. Even though the record does not show that Hodges found buyers for Fay, Curry, Garland, and Thomas, Hodges' contribution to the scheme—the heroin—clearly aggravated it. And their daily transactions with Hodges, despite the minimal payment they received, indicate that Hodges had some level of control over Fay, Curry, Garland, and Thomas.

Additionally, middling drug deals by referring customers to dealers—as did Curry, Garland, Fay, Thomas—without more does not qualify someone as a leader, organizer, manager or supervisor. *See United States v. Fox*, 548 F.3d 523, 530 & n.6 (7th Cir. 2008); *United States v. Schuh*, 289 F.3d 968, 973 (7th Cir. 2002). Since our focus is on relative culpability, *Mendoza*, 576 F.3d 711, 717 (7th Cir. 2009); *Howell*, 527 F.3d at 649, Hodges was the most responsible for the heroin distribution.

AFFIRMED.