In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3004

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DUNG P. THI, also known as Kathy Thi,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:11-cr-00021-bbc-1—**Barbara B. Crabb**, *Judge*.

ARGUED JUNE 12, 2012—DECIDED AUGUST 13, 2012

Before BAUER, KANNE and WILLIAMS, *Circuit Judges.*

PER CURIAM. Dung Thi, a 24-year-old Vietnamese woman, pleaded guilty to bank fraud after she and her boyfriend, Sang Danh, stole debit-card information from customers of her nail salon and used that information to make unauthorized ATM withdrawals. *See* 18 U.S.C. § 1344. The district court directed her to pay more than $77,000 in restitution and sentenced her to 36 months' imprisonment, 5 months below the bottom of the Guide-

lines range. On appeal she argues that the district court failed to adequately consider her arguments in mitigation, particularly those addressing her minimal role in the offense, the effect of her sentence on her young daughter, and the sufficiency of a sentence of home confinement. We conclude that the court did all that was necessary to respond to those arguments and thus affirm the sentence.

## I. BACKGROUND

Within a year of moving from California to Wisconsin, Thi entered into an installment contract to purchase "Le Nails" salon in Fitchburg, Wisconsin, and she and Danh began operating the business. Salon customers were encouraged to pay with debit cards, and Thi and Danh used a hidden video camera to record them typing their personal identification numbers (PINs) into a keypad. The couple stored these numbers in multiple electronic files, one of which contained more than 800 entries and was found on a flash drive in Thi's purse at the time of her arrest. They sent this information to coconspirators in California, and Thi used it herself to conduct unauthorized withdrawals in Wisconsin and California, for a total loss of more than $77,000.

Thi and Danh both were charged with bank fraud and access-device fraud, though Thi pleaded guilty to only one count of bank fraud. This count related to six transactions, captured on ATM surveillance footage, that she completed using debit cards "recoded" with her customers' information. A probation officer calculated

a total offense level of 22 and a criminal-history category of I, for a Guidelines range of 41 to 51 months. (Danh was later convicted by a jury of bank fraud and access-device fraud and awaits sentencing. *See United States v. Danh*, No. 3:11-cr-00021-bbc-2, ECF No. 164 (W.D. Wisc. Feb. 6, 2012).)

At sentencing, the parties disagreed about the extent of Thi's role in the offense, though neither party mentioned U.S.S.G. § 3B1.2, which applies to minimal or minor participants in an offense. Defense counsel objected to the probation officer's assertion that Thi recorded customer information and completed several fraudulent transactions. Counsel argued that Thi deserved a lower sentence under § 3553(a) because another salon employee was the true "mastermind" behind the scheme, and upon learning of it, Thi withdrew only about $4,800. The government retorted, however, that Thi worked at her salon frequently, that her purse contained the flash drive loaded with customer PINs and account numbers, and that she was recorded in jail talking to Danh about customer account information being stored in their home in Wisconsin and sent to California. The government advised the court that Thi may be denying relevant conduct and, if so, the court should reject the probation officer's recommended downward adjustment for acceptance of responsibility. Fearful of losing this downward adjustment, defense counsel withdrew his objections to the probation officer's description of Thi's role in the offense.

The district court adopted the probation officer's Guidelines calculations and imposed a below-range sentence of 36 months' imprisonment. The court acknowledged that Thi was a "young mother who showed great promise as a high school student." But the court also found that Thi knew that her customers were being videotaped and their information sent to California to make fraudulent purchases. She exploited customers' trust, the court added, and showed no signs of stopping if her criminal activity had not been detected.

## II. DISCUSSION

On appeal Thi targets her sentence and argues for the first time that she deserved a downward adjustment under § 3B1.2. She maintains that Danh and another salon employee were the primary perpetrators and that she "innocently" operated the salon and withdrew only a small portion of the total loss amount.

The government raises a threshold argument that Thi waived any request for a § 3B1.2 adjustment when she withdrew her objections to the probation officer's description of her role in the offense. But waiver does not apply here because, as Thi emphasizes, her attorney at sentencing never sought—or abandoned any request for—an adjustment under § 3B1.2. Waiver is the intentional abandonment of a known right and precludes appellate review of an issue, but when an attorney or a defendant negligently bypasses a valid argument, the argument is forfeited, not waived, and we review it for plain error. *See United States v. Vasquez*, 673 F.3d 680, 684

(7th Cir. 2012); *United States v. Johnson*, 668 F.3d 540, 542 (7th Cir. 2012). Although Thi's attorney downplayed Thi's role in this offense and later withdrew his arguments, he framed these arguments only in terms of § 3553(a), not § 3B1.2. Because waiver principles must be construed liberally in favor of defendants, *see Vasquez*, 673 F.3d at 684; *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010), we will treat Thi's § 3B1.2 argument as forfeited rather than waived and review it for plain error.

But Thi's § 3B1.2 argument is nevertheless unpersuasive. To qualify for any reduction under § 3B1.2, Thi needed to demonstrate that she was "substantially less culpable" than the average participant in the scheme. *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011); *United States v. Sorich*, 523 F.3d 702, 717 (7th Cir. 2008). Because the record shows that Thi was at least as culpable as her coconspirators, she did not meet this standard. Investigators reported that, based on their surveillance of Thi's salon, she appeared to be one of three "primary employees" at "Le Nails," along with Danh. Yet Thi alone agreed to buy the salon and was caught carrying the flash drive that stored the private financial information of hundreds of salon customers. As the district court found, Thi knew that customer information was being trafficked to California (to make fraudulent purchases) and actively participated in this scheme by ingratiating herself with customers, stealing their private financial information, and siphoning money from their bank accounts.

Thi also faults the district court for not taking into account the adverse effect her imprisonment will have on her family—especially her (and Danh's) young daughter—because the Guidelines encourage courts to consider whether a defendant's incarceration will result in a "loss of caretaking" that "substantially exceeds" the typical harm of incarceration. *See* U.S.S.G. § 5H1.6, cmt. n.1(B)(ii); *United States v. O'Doherty*, 643 F.3d 209, 215-16 n.3 (7th Cir. 2011); *United States v. Poetz*, 582 F.3d 835, 839 (7th Cir. 2009). Thi emphasizes that her three-year-old daughter faces not only the incarceration of both parents, but also a cross-country relocation to live with a grandmother who speaks little English and comes from a different cultural background. Thi's circumstances indeed are unusual in that both parents face prison time, *see United States v. Gary*, 613 F.3d 706, 710 (7th Cir. 2010), and the court's discussion about this issue is bare-bones: it remarked only that Thi is a "young mother" and did not mention the possibility of Danh's imprisonment. But the court also recommended that Thi serve her below-range prison term "as close as possible to her family" and in a "residential reentry center" (a halfway house)—recommendations that may allow for outside visitation opportunities. Although it might have been helpful for the court to say more, the court said enough to satisfy us that it understood and took account of Thi's family circumstances. *See Gary*, 613 F.3d at 710; *Poetz*, 582 F.3d at 839-40.

Finally, Thi for the first time relies on § 3553(a) to argue that her sentence is unreasonable because the district court did not impose a "split sentence" including

home confinement as an alternative to imprisonment. But Thi's below-range sentence is presumed reasonable and in no way undermined by a prison term rather than home detention. *See Poetz,* 582 F.3d at 838; *United States v. McIlrath*, 512 F.3d 421, 426-27 (7th Cir. 2008). Moreover, the Sentencing Guidelines advise against home imprisonment for defendants like Thi—who have a Guidelines range in Zone D of the sentencing table—and recommend instead that they serve a prison term at least as long as the low end of the range. *See* U.S.S.G. § 5C1.1(f) & cmt. n.9.

AFFIRMED.