In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2594

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTONIO FIGUEROA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 469-1—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED APRIL 25, 2012—DECIDED JUNE 11, 2012

Before POSNER, SYKES, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* Section 3B1.1 of the U.S. Sentencing Guidelines provides for an increase in the guideline range for a defendant who is found to be an organizer, leader, manager, or supervisor of criminal activity. Application Note 4 states (italics added):

In *distinguishing a leadership and organizational role from one of mere management or supervision*, titles such as "kingpin" or "boss" are not controlling. Factors the

court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies *as a leader or organizer* of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

Even though, as is obvious from its language, the Application Note concerns only the meaning of the terms "organizer" and "leader," courts including our own have on occasion suggested that the seven factors that the Note says a sentencing judge should consider in determining whether a defendant is an "organizer" or "leader" are also helpful in determining whether he is a "manager" or "supervisor." E.g., *United States v. Howell*, 527 F.3d 646, 649 (7th Cir. 2008); *United States v. Mustread*, 42 F.3d 1097, 1104 (7th Cir. 1994); *United States v. Jackson*, 639 F.3d 479, 483 (8th Cir. 2011). Other opinions flat out apply the seven factors to managers and supervisors, in the teeth of the language that we've italicized. See, e.g., *United States v. Payton*, 636 F.3d 1027, 1048 (8th Cir. 2011); *United States v. McDonald*, 521 F.3d 975, 978 (8th Cir. 2008); *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1248-49 (10th Cir. 2004); *United States v. Taylor*, 248 F.3d 506, 515 (6th Cir. 2001). But *United States v. Cali*, 87 F.3d 571, 578 (1st

Cir. 1996), rejects the applicability of the seven factors to determining whether a drug dealer is a manager or a supervisor.

It is odd that the same factors should be thought to identify a leader and a supervisor—the CEO of a supermarket chain, who is certainly a "leader," but in addition to him the head of the produce department at one of the chain's supermarkets, who is merely a "supervisor." A low-level supervisor does not "exercise . . . decision making authority," though virtually any employee has to make *some* decisions (for example, whom to wait on first, if he is a store clerk). The low-level supervisor has no claim to a share in the "fruits" of the enterprise and probably no hiring authority ("recruitment") either. And he does little in the way of "planning" or "organizing."

Economy of words is not a defining characteristic of lawyers, including the lawyers who drafted the sentencing guidelines and application notes and the lawyers and judges who have drawn on the seven factors in Application Note 4 to help determine who is a "supervisor." The best that can be said for applying the seven factors to supervisors is that section 3B1.1(c) provides the same sentencing bonus whether the defendant was an organizer, leader, manager, or supervisor, if the criminal activity in which he occupied one of those four roles had fewer than five participants and was not "otherwise extensive."

The quoted term is essential to sentence determination in many cases (of which this case should probably have been thought one) but is not defined, except that Ap-

plication Note 3 to section 3B1.1 states that "in assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive."

Some circuits hold that for an organization to be "otherwise extensive" the number of participants plus outsiders must be five or more (for example, three participants and two outsiders), *United States v. Skys*, 637 F.3d 146, 156-58 (2d Cir. 2011); *United States v. Anthony*, 280 F.3d 694, 699-701 (6th Cir. 2002); *United States v. Wilson*, 240 F.3d 39, 47-51 (D.C. Cir. 2001); *United States v. Helbling*, 209 F.3d 226, 244-46 (3d Cir. 2000). Others—the majority, including our court—hold that the term "otherwise extensive" can refer to geographical extent and to the quantity and value of drugs sold, even if participants plus outsiders don't add up to five or more. *United States v. Pabey*, 664 F.3d 1084, 1096-97 (7th Cir. 2011); *United States v. Diekemper*, 604 F.3d 345, 353-54 (7th Cir. 2010); *United States v. Thiongo*, 344 F.3d 55, 62-63 (1st Cir. 2003); *United States v. Vasquez-Rubio*, 296 F.3d 726, 729 and n. 3 (8th Cir. 2002); *United States v. Yarnell*, 129 F.3d 1127, 1138-39 (10th Cir. 1997); cf. *United States v. Booth*, 309 F.3d 566, 576-77 (9th Cir. 2002).

In a tiny enterprise, neither extensive nor "otherwise extensive," the four roles—organizer, leader, manager, supervisor—are unlikely to be differentiated. There is likely to be one boss, and it doesn't matter what one calls him. But in a substantial enterprise, organized as

substantial enterprises legal or criminal usually are—that is, hierarchically—there will be organizer-leaders (the guidelines do not distinguish between those two designations) and manager-supervisors (again not distinguished, and in fact not distinguishable on any ground that we can relate to sentencing policy) intermediate between the organizer-leaders and the rank and file. Application Note 4 relates only to the organizer-leaders; we cannot see what guidance it provides to determining whether a participant who is neither a boss nor a grunt is a manager or (the same thing, just a different word) a supervisor.

On the recommendation of the probation service, the judge in this case gave the defendant the two-level enhancement provided for in section 3B1.1(c). That, recall, is the enhancement for organizers, leaders, managers, and supervisors in an organization with fewer than five participants and not "otherwise extensive"—an organization in which the four terms are apt to be synonymous, although it's conceivable that a four-person organization could have a boss, an underboss, and two workers supervised directly by the underboss (the manager or supervisor) and indirectly by the boss (the organizer or leader). The defendant argues that however many participants there were in the conspiracy of which he was a member, he was just a communication channel; his lawyer calls him a "conduit," a "messenger," between "people in an organization" in which he served "a middle function," being directed by a man named Primo who was one of "the people that are actually running this drug operation."

The defendant supervised a man named Cruz, who obtained heroin in Texas and transported it to the defendant in Chicago for further distribution. The defendant was thus a middle manager in a drug enterprise. The enterprise had only four confirmed participants—the defendant, Cruz, Primo, and an assistant to the defendant, identified only as "Individual A." Nevertheless the enterprise was "otherwise extensive." Figueroa paid for Cruz and his family to fly from Chicago to Texas, and doubtless the purpose of having Cruz drive with his family rather than alone was, by making his trip seem innocent, to reduce the likelihood of his being apprehended en route. The family members thus were outsiders involved in the drug enterprise. In addition, Cruz made a number of heroin-bearing trips to Chicago, and in the one that led to the defendant's arrest was carrying 37 kilograms of heroin, which would have a wholesale value of up to $2.5 million. A drug operation that handles such large quantities is likely, though not certain, to have at least five participants, even if they can't all be identified, which further supports an inference, drawn from the geographical extent and amount of drugs, that the conditions for the sentencing enhancement were satisfied in this case. *United States v. Brown*, 944 F.2d 1377, 1381-82 (7th Cir. 1991); *United States v. Herrera*, 878 F.2d 997, 1001-02 (7th Cir. 1989); *United States v. Childress*, 58 F.3d 693, 714 (D.C. Cir. 1995) (per curiam); *United States v. Meyers*, 847 F.2d 1408, 1414 (9th Cir. 1988).

So the defendant lucked out to get only a 2-level enhancement; as a manager or supervisor in an "otherwise

extensive" enterprise he should have received the 3-level enhancement in section 3B1.1(b). The record and parties are silent on why he did not; someone dropped the ball. But that is immaterial to the issue presented by the appeal.

When the question is not whether the defendant is a leader or organizer, but instead a manager or supervisor in a hierarchical organization (hence a "middle manager"), there is no need to sweat over the terms "manager" or "supervisor"—to worry, for example as we did recently in *United States v. Robertson*, 662 F.3d 871, 877 (7th Cir. 2011), quoting earlier cases, over whether a defendant given an enhancement under one of these rubrics "exercised some control over others" or alternatively "played a coordinating or organizing role." If a judge, a probation officer, a lawyer, even a defendant, doesn't know what a "manager" or "supervisor" is, Application Note 4 isn't going to help him—especially since it's about organizers and leaders and *not* middle managers and low-level supervisors, as the cases, hungry for text to hang a decision on, are reluctant to acknowledge. So we won't try the reader's patience with a trip to the dictionary, where we would find other unhelpful synonyms for "supervisor," such as one who "oversees," or unhelpful periphrases such as "to coordinate, direct, and inspect continuously and at first hand [in order] to accomplish" some objective.

The defendant supervised Cruz. He told him where to go to get the drugs and, when he returned with them, where to meet him to deliver the drugs and get paid. Cruz

was a "mule"; the defendant was the mule skinner. We don't call real mule skinners supervisors, because mules are not people. But drug mules are people and the defendant was a supervisor, or if one prefers a manager. A supervisor, a manager, tells people what to do and determines whether they've done it. That was the defendant's job.

But, he argues, he was merely transmitting orders received from Primo. He had no discretion. He was like a Western Union messenger, or indeed like a telephone wire. But supervision often consists of transmitting directives from above. Low-level supervisors are themselves closely supervised and thus have little discretion. The defendant argues that the only reason Primo didn't communicate directly with Cruz was to reduce the probability of being apprehended, by having a layer between himself and the mule, that layer being the defendant (a "cutout"). But by the same token the defendant obtained some protection against apprehension by having a mule to fetch the drugs, rather than courting arrest by doing that himself—and indeed it was Cruz who was arrested first and the defendant only after Cruz agreed to cooperate with the authorities and led the defendant into a trap.

Because to be a "manager" or "supervisor" is to occupy a role—to have a status—cases distinguish between ongoing supervision and merely asking a coconspirator on one occasion to do something. *United States v. Mankiewicz*, 122 F.3d 399, 405-06 and n. 4 (7th Cir. 1997); *United States v. Mitchell*, 85 F.3d 800, 813-14 (1st Cir.

1996); *United States v. McGregor*, 11 F.3d 1133, 1138-39 (2d Cir. 1993). The defendant's supervision of Cruz, however, was continuous.

The defendant was, as the district judge rightly found, Cruz's supervisor; that is all we know or need to know.

AFFIRMED.