In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3622

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALFREDO VASQUEZ-HERNANDEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 CR 383 — **Rubén Castillo**, *Chief Judge.*

ARGUED JANUARY 11, 2016 — DECIDED AUGUST 25, 2016

Before EASTERBROOK, WILLIAMS, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Alfredo Vasquez-Hernandez pleaded guilty to a drug conspiracy. 21 U.S.C. §846. He admitted transporting 200 kilograms of cocaine, worth some $5 million, on behalf of the notorious Sinaloa Cartel, and to receiving a further 76 kilograms to be sold on consignment for about $2 million. The district court calculated a Guidelines range of 188 to 235 months' imprisonment and sentenced

Vasquez-Hernandez to 264 months, about 2½ years more than the high end of the range. Although Vasquez-Hernandez conceded being an agent of others, the district judge concluded that he also had a supervisory role—that, indeed, anyone entrusted with $7 million of someone else's cocaine must have high status in the organization. Vasquez-Hernandez contends on appeal that these were one-off transactions, that he supervised no one, that the range therefore should have been 135 to 168 months, and that his sentence should be within that range.

The principal appellate contest revolves around the three offense levels that the district judge added under U.S.S.G. §3B1.1(b), which applies when the defendant was "a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive". The district court found that the Sinaloa Cartel is substantially larger than five participants, and that Vasquez-Hernandez had criminal contact with at least that many persons. If an organization has five members (or is otherwise extensive), supervising any one of them supports the enhancement. See *United States v. Figueroa*, 682 F.3d 694, 696–97 (7th Cir. 2012). The judge's findings are not clearly erroneous.

Vasquez-Hernandez makes much of the district judge's failure to name the persons he managed or supervised. Yet the language of §3B1.1(b) does not require naming names, nor does our case law. See *United States v. Mansoori*, 304 F.3d 635, 668–69 (7th Cir. 2002); *United States v. Richards*, 198 F.3d 1029, 1031, 1034 (7th Cir. 2000). This leaves only Vasquez-Hernandez's argument that he just didn't supervise anyone.

One problem with this argument is the sheer quantity of cocaine to which he admitted. No one can carry 276 kilograms of cocaine on his back or hide it in the glove compartment of a car. Moving any substance of this weight and bulk requires the assistance of multiple people. And the district judge inferred from the fact that the Sinaloa Cartel was willing to trust Vasquez-Hernandez with $7 million worth of cocaine that he had a high status in the organization and was in a position to tell at least some other people what to do, rather than being at the bottom of the totem pole. That inference is not clearly erroneous.

More: Vasquez-Hernandez effectively admitted supervising some others. "Individual A" (whose name has been concealed for his safety) fronted the 76 kilograms to Vasquez-Hernandez. As part of his plea, Vasquez-Hernandez stated that he "utilized Individual A's connections to arrange for the transportation of the cocaine". This strongly implies that he told Individual A's associates (his "connections") what to do. It may be that Vasquez-Hernandez and Individual A were on the same level of the organization, neither giving instructions to the other, but that can't be said about the "connections" through whom Vasquez-Hernandez made essential arrangements.

The district court did not make any findings of fact on this subject (beyond saying that Vasquez-Hernandez must have had some "subordinates" to move the drugs) and did not need to. Disputes must be resolved by findings; undisputed matters may be taken as established. The district court did remark that 276 kilograms of cocaine can't be moved by one person, and that the quantity alone prevents treating Vasquez-Hernandez as a low-level mule. This means that

Vasquez-Hernandez had authority over at least one per-son—and, since that person need not be identified, the ap-plication of an enhancement under §3B1.1(b) was not an abuse of discretion.

Vasquez-Hernandez maintains that the judge should not have imposed a sentence longer than 235 months, the top of the range as the court calculated it. His sentence was 29 months higher, which does not require elaborate justifica-tion. The quantity table in U.S.S.G. §2D1.1 assigns 150 to 450 kilograms of cocaine to offense level 36. Vasquez-Hernandez was responsible for at least 276 kilograms of cocaine, almost double what is necessary to produce that level. The judge also suspected that Vasquez-Hernandez was lying when he said that these 276 kilos represent the *only* drugs for which he is responsible, and that he is just the proprietor of a struggling auto-repair shop who accepted help in the form of 276 kilos of cocaine from friends who wanted to assist his family financially. The judge stated: "I cannot sit here, as a judge who's been on the bench for 20 years and who's been involved in the drug war for a good portion of my life, and think for one second, nor do I think any other Chicagoan could think for one second that this was the first time that you just happened to do this, that you … got up out of bed and said, well, let me do a 276-kilogram transaction to Chi-cago today."

The prosecutor produced statements from other con-fessed participants in the Sinaloa Cartel that attributed sub-stantial quantities to Vasquez-Hernandez. These conspira-tors asserted that they, working together with Vasquez-Hernandez, had imported at least ten tons of cocaine—mostly by aircraft but some by trains and submarines—and

smuggled the proceeds back to Mexico. The district court decided to take the approach most favorable to Vasquez-Hernandez and disregard this evidence, although at one point the judge mused that it called into question the wisdom of giving Vasquez-Hernandez a three-level reduction for acceptance of responsibility. (If the evidence had been credited, Vasquez-Hernandez not only would have lost this reduction but also would have been exposed to a two-level addition for obstructing justice by falsely denying relevant conduct.) The district court's overall approach cannot be deemed unreasonably unfavorable to Vasquez-Hernandez.

Indeed, we wonder whether the district judge's decision to exceed the top of the Guidelines range does not show that details such as the §3B1.1 enhancement were irrelevant. Multiple potential additions and subtractions were in play. We've mentioned three—supervision, acceptance of responsibility, and obstruction of justice—and there were more. If it was a mistake to decide the supervision issue adversely to Vasquez-Hernandez, it may equally have been a mistake to rule in his favor on acceptance of responsibility and the quantity of cocaine for which he is accountable.

We have urged district judges to let us know whether they would have imposed the same sentence even if they had also ruled differently on one of the many subsidiary issues that the Guidelines pose. See, e.g., *United States v. Hawkins*, 777 F.3d 880, 885 (7th Cir. 2015); *United States v. Lopez*, 634 F.3d 948, 953–54 (7th Cir. 2011); *United States v. Sanner*, 565 F.3d 400, 405–06 (7th Cir. 2009). The district judge's statements at sentencing strongly imply that three levels one way or the other (either for supervision or acceptance of responsibility) just did not affect the sentence. He said several

times that 25 years (less credit for time Vasquez-Hernandez had spent in Mexican confinement) was the only sensible sentence. But the judge did not say expressly that he would have held to this view had the Guidelines range been as low as 135 to 168 months, as Vasquez-Hernandez contends it should have been. It would help both litigants and the court of appeals for judges to say when every last level matters, and when it does not.

AFFIRMED

WILLIAMS, *Circuit Judge*, dissenting. For drug-distribution offenses, the Guidelines recommend lengthier sentences for larger distributions. For example, before applying enhancements or reductions, the 2013 Guidelines that were used in this case recommend a sentence of between 235 and 293 months for an offender with no prior criminal history who distributes 276 kilograms of cocaine. U.S.S.G. § 2D1.1(a)(5)(c)(1); § 5A. If the same offender distributed between 500 grams and 2 kilograms, his range would be only 63 to 78 months. *Id*. § 2D1.1(a)(5)(c)(7); § 5A. So drug quantity matters—a lot. There is nothing inappropriate about that.

But the enhancements under § 3B1.1 require more than just a lot of drugs. These enhancements are aimed at the offender's "relative role" in the offense. *United States v. Schuh*, 289 F.3d 968, 972 (7th Cir. 2002) (citing *United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir. 1994)). If ten offenders worked together to move 276 kilograms of cocaine, but one of them was the mastermind, two were intermediate supervisors, and the rest were foot soldiers, § 3B1.1 recommends punishing the mastermind more harshly than the supervisors, and the supervisors more harshly than the foot soldiers. That is so even though, in the determination of their base offense levels, they may all be held accountable for the full 276 kilograms.

The key dispute in this case is whether the evidence justified punishing Vasquez-Hernandez for being a "manager or supervisor." Because I disagree with my colleagues on this point, I respectfully dissent. The majority's holding rests on two pillars: the quantity of drugs, and the wording in a document submitted on Vasquez-Hernandez's behalf. Both are addressed below; neither withstands scrutiny.

### A.  Drug Quantity

Vasquez-Hernandez was entrusted with an enormous amount of cocaine. The majority writes that the district judge "inferred" from that "trust" that Vasquez-Hernandez managed or supervised "at least some people." The majority concludes that such an inference was not clearly erroneous. But as the majority acknowledges,[1] the district judge did not explicitly find that Vasquez-Hernandez managed or supervised anyone. So the judge said nothing about the inference that the majority credits him with having made. We should not guess at a judge's inferences and then decide whether they were clearly erroneous.

In any event, the inference, if it was made, *was* clearly erroneous. As we have held, trust does not imply management or supervision. *United States v. Pagan*, 196 F.3d 884, 893 (7th Cir. 1999) ("The fact that Pagan may have 'trusted' Herrera-Ruiz more than the other street-level dealers in his operation, standing alone, does not support the enhancement."). We very recently reaffirmed that logic in a different context, holding that "trust" does not prove that a buyer and seller of drugs are co-conspirators. *United States v. Musgraves*, --- F.3d ----, 2016 U.S. App. LEXIS 13690, at *19–20 (7th Cir. July 27, 2016). And because "trust" does not imply management or supervision, we have repeatedly rejected the specific argument accepted today—that a § 3B1.1 enhancement is appropriate simply because the defendant was entrusted with a

---

[1] The majority writes that the district judge "did not make any findings of fact on this subject (beyond stating that Vasquez-Hernandez must have had some 'subordinates' to move the drugs) … ." In fact, the judge found that Vasquez-Hernandez's co-defendants had subordinates, not that anyone was subordinate to Vasquez-Hernandez.

large quantity of drugs. *E.g.*, *Pagan*, 196 F.3d at 892 ("The fact that a defendant was a distributor in a drug conspiracy, even a large distributor, is not enough to support a § 3B1.1 offense level increase. Instead, the government must show that the defendant exercised some control over others involved in the commission of the offense.") (internal citation and quotation marks omitted); *United States v. Brown*, 944 F.2d 1377, 1381–82 (7th Cir. 1991) ("The government showed that William processed large quantities of marijuana, but we have previously rejected the notion that the size of a drug deal is determinative of eligibility for an enhancement under § 3B1.1."); *see also United States v. Herrera*, 878 F.2d 997, 1001 (7th Cir. 1989) ("[W]hile we have no doubt that a large quantity of drugs permissibly may be used to infer that a large organization exists, that does not address the defendant's relative role in that large organization—the issue under Guidelines 3B1.1."). The majority does not grapple with, or even mention, *Pagan*, *Herrera*, or *Brown*.

## B. Vasquez-Hernandez's Admissions

The majority writes that Vasquez-Hernandez "effectively admitted supervising some others." That is a remarkable way to interpret the relevant document, which was submitted by Vasquez-Hernandez to explicitly object to the § 3B1.1 enhancement. A few paragraphs before the snippet relied on by the majority, the document states: "Mr. Vasquez-Hernandez never managed or supervised anyone in connection with the drug conspiracy." The document contains similar denials throughout. Nonetheless, the majority concludes that Vasquez-Hernandez's admission that he "utilized Individual A's connections to arrange for the transportation of the cocaine" "strongly implies that he told Individual A's as-

sociates (his 'connections') what to do." The government made a similar argument—that the word "arranged" is "an acknowledgement by [Vasquez-Hernandez] that he necessarily acted in a managerial or supervisory role with respect to those participants who actually transported the narcotics." Neither the majority nor the government cited anything in support of its reasoning—not even a dictionary. And at oral argument, the government conceded that "arranged" does *not* imply management or supervision. (For example, one can "arrange" to have Federal Express ship an enormous quantity of just about anything, across the country, without managing or supervising anyone involved.)

The reasoning employed by the majority and the government has been appropriately rejected by one of our sister circuits (in another case that the majority fails to mention). In *United States v. Martinez*, 584 F.3d 1022 (11th Cir. 2009), the Eleventh Circuit reversed a § 3B1.1 enhancement, even though the defendant had admitted to "orchestrat[ing]" drug shipments and to "us[ing] others to assist in the drug shipments." Noting that "orchestrate" means "to *arrange*, develop, organize, or combine so as to achieve a desired or maximum effect," *id*. at 1028 (citing Webster's Third New International Dictionary (2002)) (emphasis added), the court held that the word "orchestrate" did not prove that the defendant "exercised any position of leadership or authority over his co-conspirators." *Id*. Our case is not meaningfully different.

"Arranging" a shipment by "utilizing" "connections" *might be* part of managing or supervising, or it might be merely cooperating. But only the former counts because a § 3B1.1 "enhancement requires ongoing supervision, not a

one-off request from one equal to another during the course of the criminal activity." *United States v. Weaver*, 716 F.3d 439, 444 (7th Cir. 2013); *see also United States v. Figueroa*, 682 F.3d 694, 697–98 (7th Cir. 2012) ("Because to be a 'manager' or 'supervisor' is to occupy a role—to have a status—cases distinguish between ongoing supervision and merely asking a coconspirator on one occasion to do something.") (citations omitted). Simply put, Vasquez-Hernandez did not admit to managing or supervising another criminal participant.

### C. Speculation Not Sufficient

I am not saying that Vasquez-Hernandez *was not* a manager or supervisor. But the facts in the record—that he "arranged" a very large drug shipment by "utilizing" someone else's "connections"—do not support the required conclusion that he managed or supervised another criminal participant. A sentencing enhancement cannot be based on mere speculation. *E.g.*, *United States v. Clinton*, --- F.3d ----, 2016 U.S. App. LEXIS 10885, at *6 (7th Cir. June 16, 2016) (reversing enhancement and rejecting as speculation the conclusion that a gun was paid for with drugs merely because it was sold by a drug addict to a drug dealer); *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) (due process requires that sentencing determinations be based on reliable evidence rather than speculation or unfounded allegations). Indeed, we have rejected speculation-based enhancements in the specific context of § 3B1.1. In *Schuh*, the defendant owned a tavern that he let drug dealers use to make sales, and they showed their appreciation by giving him free cocaine. 289 F.3d at 971. The district judge applied a § 3B1.1 enhancement, based in part on his conclusion that the tavern owner could have demanded more cocaine from the dealers. *Id*. at

972. Finding that to be "mere speculation," we rejected the enhancement. *Id*. at 972–73.

Imagine a district judge applied a § 3B1.1 enhancement to an offender based on (1) the fact that the offender had been dealing drugs for five years, and (2) the judge's guess that nobody lasts in the drug trade for five years without moving up the ladder. Recognizing that "common sense assumptions about the drug trade only go so far," *United States v. Block*, 705 F.3d 755, 764 (7th Cir. 2013), I believe we would reject the enhancement. But as best as I can tell, the majority affirms Vasquez-Hernandez's enhancement based on very similar speculation. I respectfully dissent.