WILLIAMS, Circuit Judge,
dissenting.
For drug-distribution offenses, ■ the Guidelines recommend lengthier sentences for larger distributions. For example, before applying enhancements or reductions, the 2013 Guidelines that were used in this case recommend a sentence of between 235 and 293 months for an offender with no prior criminal history who distributes 276 kilograms of cocaine. U.S.S.G. § 2Dl.l(a)(5)(c)(l); § 5A. If the same offender distributed between 500 grams and 2 kilograms, his range would be only 63 to 78 months. Id. § 2Dl.l(a)(5)(c)(7); § 5A. So drug quantity matters — a lot. There is nothing inappropriate about that.
But the enhancements under § 3B1.1 require more than just a lot of drugs. These enhancements are aimed at the offender’s “relative role” in the offense. United States v. Schuh, 289 F.3d 968, 972 (7th Cir. 2002) (citing United States v. Mustread, 42 F.3d 1097, 1103 (7th Cir. 1994)). If ten offenders worked together to move 276 kilograms of cocaine, but one of them was the mastermind, two were intermediate supervisors, and the rest were foot soldiers, § 3B1.1 recommends punishing the mastermind more harshly than the supervisors, and the supervisors more harshly than the foot soldiers. That is so even though, in the determination of their base offense levels, they may all be held accountable for the full 276 kilograms.
The key dispute in this case is whether the evidence justified punishing Vasquez-Hernandez for being a “manager or supervisor.” Because I disagree with my colleagues on this point, I respectfully dissent. The majority’s holding rests on two pillars: the quantity of drugs, and the wording in a document submitted on Vasquez-Hernandez’s behalf. Both are addressed below; neither withstands scrutiny-
A. Drug Quantity
Vasquez-Hernandez was entrusted with an enormous amount of cocaine. The majority writes that the district judge “inferred” from that “trust” that Vasquez-Hernandez managed or supervised “at least some people.” The majority concludes that such an inference was not clearly erroneous. But as the majority acknowledges,[1] the district judge did not explicitly find that Vasquez-Hernandez managed or supervised anyone. So the judge said nothing about the inference that the majority credits him with having made. We should not guess at a judge’s inferences and then decide whether they were clearly erroneous.
*856 In any event, the inference, if it was made, was clearly erroneous. As we have held, trust does not imply management or supervision. United States v. Pagan, 196 F.3d 884, 893 (7th Cir. 1999) (“The fact that Pagan may have ‘trusted’ Herrera-Ruiz more than the other street-level dealers in his operation, standing alone, does not support the enhancement.”). We very recently reaffirmed that logic in a different context, holding that “trust” does not prove that a buyer and seller of drugs are co-conspirators. United States v. Musgraves, 831 F.3d 454, 2016 WL 4011172, at *6-7, 2016 U.S. App. LEXIS 13690, at *19-20 (7th Cir. July 27, 2016). And because “trust” does not imply management or supervision, we have repeatedly rejected the specific argument accepted today— that a § 3B1.1 enhancement is appropriate simply because the defendant was entrusted with a large quantity of drugs. E.g., Pagan, 196 F.3d at 892 (“The fact that a defendant was a distributor in a drug conspiracy, even a large distributor, is not enough to support a § 3B1.1 offense level increase. Instead, the government must show that the defendant exercised some control over others involved in the commission of the offense.”) (internal citation and quotation marks omitted); United States v. Brown, 944 F.2d 1377, 1381-82 (7th Cir. 1991) (“The government showed that William processed large quantities of marijuana, but we have previously rejected the notion that the size of a drug deal is determinative of eligibility for an enhancement under § 3B1.1.”); see also United States v. Herrera, 878 F.2d 997, 1001 (7th Cir. 1989) (“[WJhile we have no doubt that a large quantity of drugs permissibly may be used to infer that a large organization exists, that does not address the defendant’s relative role in that large organization — the issue under Guidelines 3B1.1.”). The majority does not grapple with, or even mention, Pagan, Herrera, or Brown.
B. Vasquez-Hernandez’s Admissions
The majority writes that Vasquez-Hernandez “effectively admitted supervising some others.” That is a remarkable way to interpret the relevant document, which was submitted by Vasquez-Hernandez to explicitly object to the § 3B1.1 enhancement. A few paragraphs before the snippet relied on by the majority, the document states: “Mr. Vasquez-Hernandez never managed or supervised anyone in connection with the drug conspiracy.” The document contains similar denials throughout. Nonetheless, the majority concludes that Vasquez-Hernandez’s admission that he “utilized Individual A’s connections to arrange for the transportation of the cocaine” “strongly implies that he told Individual A’s associates (his ‘connections’) what to do.” The government made a similar argument — that the word “arranged” is “an acknowledgement by [Vasquez-Hernandez] that he necessarily acted in a managerial or supervisory role with respect to those participants who actually transported the narcotics.” Neither the majority nor the government cited anything in support of its reasoning — not even a dictionary. And at oral argument, the government conceded that “arranged” does not imply management or supervision. (For example, one can “arrange” to have Federal Express ship an enormous quantity of just about anything, across the country, without managing or supervising anyone involved.)
The reasoning employed by the majority and the government has been appropriately rejected by one of our sister circuits (in another case that the majority fails to mention). In United States v. Martinez, 584 F.3d 1022 (11th Cir. 2009), the Eleventh Circuit reversed a § 3B1.1 enhancement, even though the defendant had admitted to “orchestrat[ing]” drug shipments and to “usfing] others to assist in the drug shipments.” Noting that “orchestrate” *857 means “to arrange, develop, organize, or combine so as to achieve a desired or maximum effect,” id. at 1028 (citing Webster’s Third New International Dictionary (2002)) (emphasis added), the court held that the word “orchestrate” did not prove that the defendant “exercised any position of leadership or authority over his co-conspirators.” Id. Our case is not meaningfully different.
“Arranging” a shipment by “utilizing” “connections” might be part of managing or supervising, or it might be merely cooperating. But only the former counts because a § 3B1.1 “enhancement requires ongoing supervision, not a one-off request from one equal to another during the course of the criminal activity.” United States v. Weaver, 716 F.3d 439, 444 (7th Cir. 2013); see also United States v. Figueroa, 682 F.3d 694, 697-98 (7th Cir. 2012) (“Because to be a ‘manager’ or ‘supervisor’ is to occupy a role — to have a status — cases distinguish between ongoing supervision and merely asking a coconspir-ator on one occasion to do something.”) (citations omitted). Simply put, Vasquez-Hernandez did not admit to managing or supervising another criminal participant.
C. Speculation Not Sufficient
I am not saying that Vasquez-Hernandez was not a manager or supervisor. But the facts in the record — that he “arranged” a very large drug shipment by “utilizing” someone else’s “connections”— do not support the required conclusion that he managed or supervised another criminal participant. A sentencing enhancement cannot be based on mere speculation. E.g., United States v. Clinton, 825 F.3d 809, 812 (7th Cir.2016) (reversing enhancement and rejecting as speculation the conclusion that a gun was paid for with drugs merely because it was sold by a drug addict to a drug dealer); United States v. Bradley, 628 F.3d 394, 400 (7th Cir. 2010) (due process requires that sentencing determinations be based on reliable evidence rather than speculation or unfounded allegations). Indeed, we have rejected speculation-based enhancements in the specific context of § 3B1.1. In Schuh, the defendant owned a tavern that he let drug dealers use to make sales, and they showed their appreciation by giving him free cocaine. 289 F.3d at 971. The district judge applied a § 3B1.1 enhancement, based in part on his conclusion that the tavern owner could have demanded more cocaine from the dealers. Id. at 972. Finding that to be “mere speculation,” we rejected the enhancement. Id. at 972-73.
Imagine a district judge applied a § 3B1.1 enhancement to an offender based on (1) the fact that the offender had been dealing drugs for five years, and (2) the judge’s guess that nobody lasts in the drug trade for five years without moving up the ladder. Recognizing that “common sense assumptions about the drug trade only go so far,” United States v. Block, 705 F.3d 755, 764 (7th Cir. 2013), I believe we would reject the enhancement. But as best as I can tell, the majority affirms Vasquez-Hemandez’s enhancement based on very similar speculation. I respectfully dissent.

. The majority writes that the district judge "did not make any findings of fact on this subject (beyond stating that Vasquez-Hernandez must have had some 'subordinates’ to move the drugs) ... In fact, the judge found that Vasquez-Hernandez’s co-defendants had subordinates, not that anyone was subordinate to Vasquez-Hernandez.