In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1998

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MAURICE COLLINS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 14-cr-20032-01 — **Colin S. Bruce**, *Judge.*

ARGUED NOVEMBER 17, 2015 — DECIDED DECEMBER 12, 2017

Before FLAUM, EASTERBROOK, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Maurice Collins pled guilty to distributing cocaine and at least 28 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 120 months in prison—the statutory minimum in light of a prior felony drug conviction. See § 841(b)(1)(B). On appeal Collins challenges the district court's decision at sentencing to

add to his Sentencing Guidelines calculation two offense levels under U.S.S.G. § 3B1.1(c) for his supervisory role in the offenses. While the guidelines have been advisory since *United States v. Booker*, 543 U.S. 220 (2005), this guideline decision had significant consequences under the terms of a statute that is mandatory, not advisory. The supervisory role enhancement disqualified Collins from safety-valve relief from the statutory minimum sentence. See 18 U.S.C. § 3553(f)(4). We generally review a district court's determinations on the guidelines for aggravating and mitigating roles for clear error, e.g., *United States v. Robertson*, 662 F.3d 871, 876 (7th Cir. 2011); *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir. 1989), but if the court acted on the basis of a misunderstanding of the legal standard, we may need to remand for reconsideration under the proper legal standard. See *Robertson*, 662 F.3d at 876.

This is an atypical drug case in which the judge based the role enhancement for defendant Collins on a legal error. Without any criminal organization or hierarchy, Collins's isolated, one-time request to another independent dealer to cover for him on a sale did not make him a supervisor or manager within the meaning of the guideline. See *United States v. Figueroa*, 682 F.3d 694, 697–98 (7th Cir. 2012); *United States v. McGregor*, 11 F.3d 1133, 1138–39 (2d Cir. 1993). We vacate the sentence and remand for resentencing.

I.  *Factual and Procedural Background*

Over several months in 2013 and 2014, law enforcement used a confidential source to carry out three controlled buys of powder cocaine and one of crack cocaine after contacting Collins. He was charged with distributing cocaine and crack cocaine. Two of the controlled buys were very simple: the confidential source, monitored at all times by law enforcement

agents, called Collins to buy cocaine, arranged to meet him, and bought the requested cocaine from him. There was no indication that anyone else was involved in those buys, and they do not affect the supervisory role issue.

Our focus is on the other two controlled buys, which each involved one other person. At the time of the first, in November 2013, Collins was out of town. He wanted to accommodate the confidential source's request for one ounce of cocaine. He turned to a friend, Robert Palmer, apparently another street-level drug dealer. Palmer owed Collins an unspecified favor but operated independently on all other occasions. On this one occasion, Collins asked Palmer to do him a favor by picking up the cocaine, delivering it to the confidential source, and accepting payment for him. In his recorded proffer interview, Collins said that Palmer helped him "just that one time"—"It was a favor for a favor." The government did not offer evidence to contradict Collins's account.

The last controlled buy occurred in April 2014. On that occasion, the source asked Collins for crack cocaine. Collins did not sell crack, but he knew someone who did. He sent the source to another dealer, T.G., in Danville, Illinois. Collins gave the confidential source the address and driving directions to T.G.'s house, and the source bought crack from T.G. There is no evidence that Collins profited from the sale or referral.

Collins pled guilty to all counts without a plea agreement. The probation officer calculated a guideline sentence of 120 months—the statutory minimum under 21 U.S.C. § 841(b)(1)(B). Without the statutory minimum, Collins's guideline range would have been well below the statutory minimum.

The court's calculation of Collins's guideline offense level included a two-level enhancement under U.S.S.G. § 3B1.1(c) because the court found that "the defendant was an organizer, leader, manager, or supervisor in any criminal activity … ." Under the statutory "safety valve," a guideline adjustment for a supervisory role bars relief from a statutory mandatory minimum sentence. See 18 U.S.C. § 3553(f)(4). The statutory provision means that this supervisory role issue presents one of the few remaining situations after *Booker* where a guideline determination produces consequences that the sentencing court does not have discretion to reject or modify.

The probation officer recommended a two-level upward adjustment under § 3B1.1(c) because Collins "directed" both Palmer and T.G. to sell drugs to the confidential source. The probation officer also noted that Collins had given a safety-valve proffer interview, but that the case agents concluded that Collins had provided false information and minimized his actions. Because of his supervisory role and dishonesty, the probation officer recommended that Collins was not eligible for safety-valve relief. If that is correct, the statutory mandatory minimum applies and is also the guideline sentence for Collins.

Collins objected to the role adjustment and denial of the safety valve. He argued that he did not "direct" either Palmer when he called upon him for a single favor or T.G. when he referred the confidential source to her on one occasion. These two incidents, he argued, were isolated and did not show that he exercised the necessary control or authority over either Palmer or T.G. needed for the role adjustment. Collins said that he lacked an ongoing relationship with either of the two; that neither worked for him; that he did not manage any

larger "scheme"; and that, with regard to the referral to T.G., no evidence indicated that he profited in any way. Collins described himself as merely a "one-man show" and argued that § 3B1.1(c) was not meant to cover acts like asking for an isolated favor or making a referral.

Regarding the sale with Palmer's help, the government relied on language from cases involving the supervision of hired drug couriers, such as *United States v. Bennett*, 708 F.3d 879, 892 (7th Cir. 2013), and *United States v. Figueroa*, 682 F.3d 694, 697 (7th Cir. 2012). Under these cases, the government argued, someone who tells another person to pick up drugs, to exchange the drugs for money, and to return the cash supervises that other person. In the government's view, Collins essentially admitted at his proffer interview that he supervised Palmer when he acknowledged: (1) asking Palmer to "go over there and serve the CI for me"; (2) telling Palmer where to pick up the drugs; and (3) having Palmer agree to turn over the money later. As to the transaction with T.G., the government argued that Collins's guilty plea to distributing crack cocaine "through T.G." also justified the role adjustment.

The district court agreed with the government and found that Collins's one-time help from Palmer supported the supervisory role adjustment. The court explained that it was wrestling with two passages from this court's decisions—one from *Figueroa* saying that "cases distinguish between ongoing supervision and merely asking a coconspirator on one occasion to do something," 682 F.3d at 698, and one from *Bennett* assigning a supervisory role to someone who "told his drug courier … where to get the drugs and where to meet him to deliver the drugs and get paid," 708 F.3d at 892 (internal quotation marks and alteration omitted). Following the language

in *Bennett* as more recent and "more instructive," the district court found that because Collins on this occasion "told [Palmer] where to go, do the deal, and … then bring the money back," he was a manager or supervisor. The court also agreed with the government that Collins's guilty plea to distributing crack cocaine in the T.G. transaction provided an independent reason to apply the role adjustment. The district court sentenced Collins to the 120-month statutory minimum. But the court added that if the role adjustment did not apply and if Collins were eligible for the safety valve, it "would not hesitate" to sentence Collins to fewer than 120 months.

II. *Analysis*

As noted, we treat application of aggravating role enhancements as findings of fact that we review for clear error, e.g., *United States v. May*, 748 F.3d 758, 760 (7th Cir. 2014); *United States v. Robertson*, 662 F.3d 871, 876 (7th Cir. 2011), but review *de novo* a district judge's interpretation of the Sentencing Guidelines. The sentencing transcript shows there was no real disagreement about the actual facts here and that the district judge viewed the issue as a legal issue that required him to navigate between our opinions in *Bennett* and *Figueroa*. Sent. Tr. 23–24.

We consider first the sale involving Palmer. The judge acknowledged there was no "ongoing relationship" and that Collins "directed" Palmer on only this one occasion. *Id*. at 24. In cases involving couriers for ongoing drug-trafficking operations, we have routinely affirmed § 3B1.1 enhancements for those who supervise couriers and others. E.g., *United States v. Figueroa*, 682 F.3d 694, 697 (7th Cir. 2012) (enhancement applies to "low-level supervisors"); *United States v. Fox*, 548 F.3d

523, 530–31 (7th Cir. 2008) (enhancement applied where defendant directed acquaintances to deliver his drugs on multiple occasions); *United States v. Howell*, 527 F.3d 646, 649–51 (7th Cir. 2008) (enhancement applied where defendant structured transactions and paid assistant to be a "de facto bodyguard, currency courier, and errand boy").

These problems under § 3B1.1 arise with seemingly infinite shadings. The text of the guideline and its application notes provide limited guidance, see, e.g., *United States v. Weaver*, 716 F.3d 439, 442–44 (7th Cir. 2013), but decades of case law help illuminate when and how the guideline applies. In *Weaver*, for example, we found that some degree of control or authority is needed, and that "some hierarchy among those involved in the criminal activity must exist to qualify a defendant for an enhancement under § 3B1.1." *Id*. at 444.

Several cases from our court and other circuits address variations on the "one-time" argument Collins makes, and they offer substantial support for his position. In *Figueroa* itself, the defendant was a middle manager for a substantial drug-trafficking organization. (The shipment that ended with his arrest was 37 kilograms of heroin with a wholesale value of up to $2.5 million.) We affirmed a supervisory role enhancement for the defendant because he supervised the trip by the courier and his family, whose presence was supposed to make the trip look innocent. The defendant told the courier where to pick up the drugs in Texas and where to deliver them in Chicago to be paid. 682 F.3d at 697. That was sufficient supervision to apply the role enhancement, we held.

In our opinion in *Figueroa*, however, we distinguished that case from cases much like this, explaining that cases applying § 3B1.1 "distinguish between ongoing supervision and

merely asking a coconspirator on one occasion to do something." *Id.* at 698, citing three cases that shed light on the issue in this case.

One was *United States v. McGregor*, 11 F.3d 1133, 1138–39 (2d Cir. 1993). The defendant was, like Collins here, selling drugs on a continuous basis but was essentially a one-man operation. On one occasion, though, McGregor asked his wife to hand two separate packages of drugs to two men who would come to their home and to accept whatever money they gave her. *Id.* at 1139. The district court found sufficient grounds to apply a § 3B1.1 enhancement, but the Second Circuit reversed, calling it "an atypical case." *Id.* The Second Circuit wrote that in other cases applying the enhancement to supervision of a family member, "the level of supervision, participation, and management was more extensive and extended for a longer period of time … ." *Id.* The court summed up: "One isolated instance of a drug dealer husband asking his wife to assist him in a drug transaction is not the type of situation that section 3B1.1 was designed to reach." *Id.*

*McGregor* was consistent with *United States v. Mankiewicz*, 122 F.3d 399 (7th Cir. 1997), also cited in *Figueroa*, where we reversed a § 3B1.1 role enhancement for a defendant named Zawadzki. The enhancement had been based on one large delivery of marijuana during which Zawadzki had asked his father to help unload and stack the bales and to accompany the (undercover) buyer to the motel where he would deal with the main organizer of the operation. *Id.* at 406. There was no evidence that the younger Zawadzki received any extra share of the profits. *Id.* We reversed the enhancement, finding that Zawadzki's directions to his father did not show a relationship that was "the sort of 'real and direct influence, aimed at

furthering the criminal activity,' that the enhancement was intended to punish." *Id.*, quoting *United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir. 1994).

In language directly applicable here, *Mankiewicz* in turn cited *United States v. Brown*, 944 F.2d 1377, 1380 (7th Cir. 1991), for the proposition that an "isolated incident of giving direction to another does not warrant" the § 3B1.1 enhancement. 122 F.3d at 406 n.4. In *Brown*, the government tried to support a role enhancement for one defendant because his home was used as a site to unload shipments and he oversaw the unloading of one shipment. 944 F.2d at 1380. The one isolated incident was not sufficient. *Id.* at 1381. We also held that the same defendant's status as a distributor to downstream customers did not support the enhancement. *Id.*; see also *United States v. Mustread*, 42 F.3d at 1104–05 (district court erred by applying enhancement to "isolated incident" where another dealer's courier once agreed to transport drugs for Mustread), citing *Brown*, 944 F.2d at 1380–81.

In *Figueroa*, we also cited *United States v. Mitchell*, 85 F.3d 800, 812–14 (1st Cir. 1996), where the First Circuit affirmed a § 3B1.1 enhancement and distinguished the Second Circuit's decision in *McGregor*. In *Mitchell*, the defendant had conspired to commit arson to burn a building where he and a partner ran a nightclub that city authorities had ordered closed. *Id.* at 802, 813. Mitchell preferred insurance proceeds to the challenge of trying to fix the problems and making money from operating the club. Mitchell had recruited the man who actually set the fire, told him how to do it, and offered to pay him $11,000. *Id.* The First Circuit had no difficulty applying the enhancement based on Mitchell's recruitment and direction of the man who actually set the fire. The First

Circuit explained that the dealer in *McGregor* had been dealing drugs on an ongoing basis and sentenced on that basis. His wife's isolated involvement on one occasion was distinguishable from Mitchell's role in recruiting and supervising the arsonist in a case focused on only that one-time arson. *Id.* at 814.

Consistent with *Mitchell* and the First Circuit's later opinion in *United States v. Cruz*, 120 F.3d 1, 4 (1st Cir. 1997) (en banc), we do not believe there is a general, "one-time exception" for § 3B1.1 enhancements. See also, e.g., *United States v. Adejumo*, 772 F.3d 513, 537–38 (8th Cir. 2014); *United States v. Salcido-Corrales*, 249 F.3d 1151, 1154 (9th Cir. 2001). At the same time, our opinions in *Figueroa*, *Weaver*, *Mankiewicz*, and *Brown* signal that a criminal who operates on his own, not as part of any organization, need not receive the enhancement because of an isolated incident like Collins's request to Palmer to cover for him on one sale while Collins was out of town. One doctor may cover one patient for another, or one lawyer may cover one case for another, without turning one into a supervisor of the other. That logic applies to the unusual facts of Collins's isolated request to Palmer, particularly where Collins did not exercise any degree of control or authority over Palmer in carrying out the sale.

The district court considered our opinion in *Figueroa* but seemed to view the "one occasion" comment as inconsistent with and apparently superseded by language in our later opinion in *United States v. Bennett*, 708 F.3d 879 (7th Cir. 2013). The role enhancement was applied to Bennett based on his supervision of a courier who transported drugs for him on multiple occasions. *Id.* at 891–92. We said that Bennett, like Figueroa, had told the courier where to get the drugs, where

to deliver them, and where to get paid, and that was sufficient to support the role enhancement. *Id*. at 892. The case was even stronger against Bennett, for he had punished his courier for a mistake by forcing her to strip, beating her, and burning her with cigarettes and cigars. *Id*. That violent discipline implies a high level of control and authority that justifies a supervisory role enhancement.

We can understand how the district judge could have understood some of the language in *Figueroa* and *Bennett* to support the enhancement here. Collins did tell Palmer on the one occasion where to pick up the drugs and where to deliver them and pick up the money. But with the luxury, perhaps, of more time to consider a broader sweep of the relevant case law, including *Weaver*, *Mankiewicz*, and *Brown*, as well as *McGregor* and the "one occasion" point in *Figueroa*, we conclude that it was a legal error to apply § 3B1.1 to the Palmer incident here. There was no organization or hierarchy, and there was just this one occasion involving Palmer, apparently as an equal rather than a subordinate, without Collins exercising control or authority over him.

We also disagree with the district court's finding that Collins's role in the single transaction with T.G. independently justified the role adjustment. We have held before that merely directing an interested buyer to a dealer is not sufficient for a § 3B1.1 adjustment. *United States v. Schuh*, 289 F.3d 968, 971, 973 (7th Cir. 2002) (enhancement did not apply to bar owner who "directed bar customers wanting drugs to the dealers" in the bar); see also *United States v. Reneslacis*, 349 F.3d 412, 417 (7th Cir. 2003) (enhancement did not apply to defendant who received kickbacks for referring clients to source for fraudulent resident-alien cards). As Collins points out, there is no

evidence that he worked with T.G., set the price for the crack cocaine, or did anything other than refer his customer to T.G. on one occasion for a product he did not sell himself. Nor is there evidence that he was compensated for either the sale or the referral. Collins did not exercise control or authority over T.G. to warrant a supervisory role adjustment.

Collins's guilty plea on the crack cocaine distribution does not change this analysis. Merely aiding or abetting the sale by T.G. and her boyfriend would have been legally sufficient to support the conviction, see 18 U.S.C. § 2, but these facts are not enough to support the supervisory role enhancement.

The erroneous application of the supervisory role enhancement was not harmless. It disqualified Collins from safety-valve relief, and we need not speculate whether the adjustment actually affected the sentence. The judge explained that if the safety valve had applied, he would have imposed a lighter sentence. On remand the district court should decide whether Collins meets the other criteria for the safety valve, see 18 U.S.C. § 3553(f), and the court may need to decide other objections to the guideline calculation that were rendered moot by the decision to deny the safety valve.

Accordingly, while Collins's convictions stand, his sentence is VACATED and the case is REMANDED for resentencing.