In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3312

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FRED MCGEE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:18CR00118-001 — **William M. Conley**, *Judge.*

ARGUED OCTOBER 1, 2020 — DECIDED JANUARY 15, 2021

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Fred McGee pleaded guilty to possession with intent to distribute 100 grams or more of heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 84 months' imprisonment, followed by a four-year term of supervised release. On appeal, he argues the district court erred in (1) imposing a leadership enhancement, (2) failing to afford him a meaningful opportunity to allocute, and

(3) calculating his criminal history points. Because we find the court erred, we remand for resentencing.

## I. Background

On January 31, 2018, McGee and two other men, Wayne Frazier and Terry Glaspie, were transporting heroin from Chicago to Minneapolis. Frazier drove, with McGee and Glaspie as passengers. Police stopped the vehicle for speeding on the highway. They ascertained none of the men had valid driver's licenses, and the vehicle was registered to McGee's girlfriend, Charity Schaefer. McGee consented to a canine "free air sniff" around the vehicle's perimeter, and the canine alerted to the presence of drugs. Eventually, police found more than 100 grams of heroin and fentanyl inside the vehicle behind the glove box. McGee was later charged with possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

On February 5, 2018, police investigators interviewed Glaspie. Glaspie stated that McGee asked him to accompany McGee from Chicago to Minneapolis. The next day, an inmate housed in the same housing block as McGee spoke with investigators. He said McGee told him that the heroin the police found belonged to McGee, not Frazier or Glaspie. The inmate also stated that Glaspie arranged for Frazier to drive to Minneapolis, since McGee had previously been pulled over without having a valid driver's license, and McGee paid Frazier to drive.

While in jail, McGee called Charles McMillan, a drug dealer with whom he previously worked. McMillan scolded McGee for hiding the drugs behind the glove compartment and told McGee that he should have hidden them in the ceiling. McMillan also blamed McGee for failing to instruct

Frazier to slow down before the men were stopped on January 31 during the transport.

On August 30, 2018, Glaspie spoke with investigators again. He told them that on the day the men were caught traveling with drugs, McGee came to Chicago to pick up him and Frazier to transport heroin to Minneapolis, "where McGee distributed it through his own local network." McGee hid the drugs in the vehicle before picking up Glaspie and Frazier. Since McGee did not have a valid driver's license, Glaspie agreed to "act as a lookout." Glaspie also stated that McGee was distributing heroin for McMillan and visited Chicago every month to retrieve heroin from McMillan for distribution in Minneapolis.

On October 11, 2018, Glaspie testified before a grand jury that McGee worked for McMillan for several years, distributing heroin in Minneapolis. Glaspie also worked for McMillan and was paid in heroin. On the day of the arrest, both McGee and McMillan had requested that Glaspie ride to Minneapolis with McGee. Glaspie did not want to drive since he did not have a license, "so McMillan suggested having Frazier drive them."

On August 19, 2019, McGee pleaded guilty to possession with intent to distribute heroin and fentanyl. The district court accepted his guilty plea and convicted him. In calculating his offense level, the Probation Office recommended a two-level enhancement for being an "organizer, leader, manager, or supervisor in the criminal activity" since "Glaspie acted at the defendant's direction in their jointly undertaken criminal activity." McGee objected to the two-point enhancement.

In determining McGee's criminal history points, the Probation Office added three points from a January 1, 2007, DUI conviction in which McGee was sentenced to six months in jail and 36 months' probation. However, his probation was later revoked, and he was sentenced to an additional 210 days in jail. McGee objected.

The court found that the length of McGee's imprisonment for the January 1, 2007, DUI conviction exceeded thirteen months, and thus, his criminal history points were properly calculated. Second, it responded to McGee's objection to the imposition of a leadership enhancement under § 3B1.1(c) of the Sentencing Guidelines. The court explained the two-level enhancement applied because McGee "ran, however badly, a Minneapolis offshoot of the larger heroin distribution enterprise based out of Chicago, including directing others in the transportation of the product."

The court calculated McGee's advisory Guidelines range as 92 to 115 months. It also noted that if it were not to impose the leadership enhancement, the Guidelines range would be 77 to 96 months.[1] The court clarified it had not decided on a sentence, and it would consider both ranges.

After hearing from defense counsel, the court addressed McGee. It asked him various questions, including questions about his risk of recidivism. After McGee responded, the court expressed its concerns that McGee failed to understand the efforts required to reform his behavior. Then, without asking whether McGee had anything further to say, the court

---

[1] In arguing for a Guidelines sentence, the government also referenced the 77-to-96-month range.

sentenced McGee to 84 months' imprisonment followed by a four-year term of supervised release. McGee appealed.

## II.  Discussion

*A.     Leadership Enhancement*

McGee first argues that the court erred in imposing a two-point leadership enhancement under § 3B1.1(c) of the Sentencing Guidelines. When considering whether an enhancement under § 3B1.1 was properly imposed, "we review the district court's factual determinations for clear error, and we review whether those facts support the enhancement *de novo*." *United States v. House*, 883 F.3d 720, 723 (7th Cir. 2018). This Court will reverse the district court's determination "only if we are left with a 'definite and firm conviction that a mistake has been made.'" *United States v. Harris*, 791 F.3d 772, 780 (7th Cir. 2015) (quoting *United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007)).

Under § 3B1.1, a defendant is subject to an increased offense level based on his or her role in the offense. "[T]he primary goal in applying § 3B1.1 should be to make a 'commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy.'" *House*, 883 F.3d at 724 (quoting *United States v. Dade*, 787 F.3d 1165, 1167 (7th Cir. 2015)). A defendant's offense level is increased by two levels if he or she "was an organizer, leader, manager, or supervisor in any criminal activity" not otherwise described in the section. U.S.S.G. § 3B1.1(c). Typically, this means that "the defendant 'had some real and direct influence' on other participants in the criminal activity." *United States v. Mankiewicz*, 122 F.3d 399, 405 (7th Cir. 1997) (quoting *United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir. 1994)).

A defendant is subject to the enhancement if he or she satisfies any of the roles in § 3B1.1(c). Although the terms used for each role are not defined by the Guidelines, we have held that a supervisor or manager "tells people what to do and determines whether they've done it." *United States v. Figueroa*, 682 F.3d 694, 697 (7th Cir. 2012). An organizer or leader exercises a greater extent of authority than a supervisor or manager. *See* § 3B1.1 n.4.[2]

In this case, the district court found the enhancement applied because (1) McGee served as a leader or manager of a "Minneapolis offshoot" of the Chicago operation and directed others in transporting the drugs, and (2) McGee "organized and recruited" Frazier and Glaspie to help him transport the heroin and fentanyl on the night of the offense. The court

---

[2] Section 3B1.1 note 4 provides several factors typically used to distinguish "a leadership and organizational role from one of mere management or supervision." These are the (1) exercise of defendant's decision-making authority, (2) nature of defendant's participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree to which defendant participated in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority defendant exercised over others. § 3B1.1 n.4. These factors need not be used to distinguish the different roles in this case, since McGee's fulfillment of any of the roles would be sufficient. However, in the past, we have found the factors are also relevant in determining whether a defendant "had a supervisory role at all." *United States v. Howell*, 527 F.3d 646, 649 (7th Cir. 2008). We have since questioned the usefulness of applying the factors when considering whether a two-level enhancement is warranted. *See Figueroa*, 682 F.3d at 696; *United States v. Bennett*, 708 F.3d 879, 891 (7th Cir. 2013) (following *Figueroa*). In any event, "slavish adherence to [the factors] is unnecessary: the ultimate question is what relative role the defendant played." *Bennett*, 708 F.3d at 891 (quoting *Mustread*, 42 F.3d at 1104, n.3).

provided no real explanation about how it arrived at these conclusions.

The record lacks evidence to support the district court's reasoning. First, nothing indicates McGee supervised others during drug distributions in Minneapolis. According to the evidence, Glaspie stated McGee distributed the heroin he obtained from Chicago in Minneapolis "through his own local network." This evidence merely suggests McGee was a "middleman." *See United States v. Brown*, 944 F.2d 1377, 1382 (7th Cir. 1991) ("[M]iddleman status alone cannot support a finding that a defendant was a supervisor, manager or leader of a criminal activity, and thus was more culpable than others for the wrongdoing—the central concern of § 3B1.1."). Distributing drugs through his own local network could mean that McGee distributed drugs to other dealers who in turn distributed drugs to buyers. It could also mean McGee had a local network of buyers to whom he distributed the drugs. Under either interpretation, there is no evidence indicating that McGee exercised any control or authority over this unknown group of people. *See United States v. Weaver*, 716 F.3d 439, 443–44 (7th Cir. 2013) (finding a three-level supervisory role enhancement was improperly imposed absent evidence that a drug dealer supervised his buyers, who were also drug dealers).

Second, McGee's interactions with Frazier and Glaspie do not justify imposition of an enhancement under § 3B1.1(c) because there was no evidence McGee played a superior role. The district court found McMillan was the overall leader of the operation while McGee played an "intermediate role." McGee and Glaspie both worked for McMillan. Although McGee asked Glaspie to accompany him from Chicago to

Minneapolis, Glaspie and McGee were both already employees of McMillan. Without additional evidence, Glaspie acting as a lookout in the transportation of the drugs is not enough to establish that McGee had any real and direct influence over Glaspie. *See id.* at 444 ("Finally, the enhancement requires ongoing supervision, not a one-off request from one equal to another during the course of the criminal activity.").

Similarly, the evidence shows only that McGee paid Frazier to drive but did not recruit him. Instead, Glaspie or McMillan suggested Frazier act as the driver. There is no evidence of McGee controlling how Frazier drove. In fact, McMillan blamed McGee for not telling Frazier to slow down. There is simply no evidence of McGee managing or supervising Frazier or Glaspie.[3] From the scant record, it is not evident that these interactions with Frazier and Glaspie make McGee more culpable.[4] For these reasons, the district court erred in imposing a two-level enhancement.[5]

---

[3] It is also noteworthy that there was no further factual development at sentencing. The government did not present evidence of McGee's leadership role or even argue for a leadership enhancement.

[4] The government also argues McGee had supervisory authority over his girlfriend, Schaefer. It cites to record evidence showing McGee planned to have his girlfriend remotely wipe his phone and collect on his debts to bail him out of jail. The government also references Schaefer travelling to Chicago with McGee to pick up the heroin. Schaefer's mere presence does not establish that she was involved. Further, any attempts to cover up the crime or assist McGee afterwards do not suggest a supervisory role over her or even that she was involved in the crime.

[5] The record does contain evidence from which the court could have found McGee exercised authority over the property (namely, contraband) and activities of the criminal organization, but a defendant must exercise control over "one or more other participants," to be subject to an

It is no defense that McGee was sentenced below the 92-to-115-month Guidelines range. The court imposed a sentence of 84 months with the supervisory role enhancement. This is within the 77-to-96-month range without the enhancement. However, "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). The fact the court chose to sentence below the Guidelines range in the first instance might indicate the court would impose a lower sentence after properly calculating the Guidelines range, but we are ill-equipped to speculate. The operative circumstance which compels our decision is the record does not indicate what the court "might have done had it considered the correct Guidelines range." *Id.* at 1347. Thus, without opining on what sentence should be imposed, we vacate and remand for resentencing.

## B.    *Right of Allocution*

Our decision on the first issue renders moot the issue of the adequacy of McGee's allocution. We need not decide whether denial of McGee's right of allocution amounted to plain error since he will have another opportunity for allocution on remand. *See United States v. Mobley*, 833 F.3d 797, 801 (2016) (explaining a general remand is preferable when a

---

enhancement under § 3B1.1. *See* § 3B1.1 n.2; *see generally*, U.S.S.G., Appendix C, Amendment 500 (Nov. 1, 1993); *see also United States v. Fones*, 51 F.3d 663, 669 (1995) (explaining "control over at least one other participant" is required).

"component part[]" of a sentence is disturbed on appeal). We expect any issues in allocution will be addressed at that point.

C.      *Criminal History Points*

Both parties agree the court miscalculated McGee's criminal history points by erroneously considering a DUI conviction from 2007. The court added three criminal history points for the 2007 conviction because it mistakenly found the sentence for that conviction exceeded thirteen months.[6] *See generally* U.S.S.G. § 4A1.1. McGee concedes that the error is not an independent basis for a remand, since it did not affect his criminal history category or Guidelines range. However, since we remand on the leadership enhancement issue, we also instruct the court to fix this error upon resentencing.

### III.  Conclusion

The record does not contain evidence to support the district court's imposition of a leadership enhancement in calculating McGee's Guidelines range. Accordingly, we VACATE the judgment of the district court and REMAND for resentencing, consistent with this opinion.

---

[6] At most, the sentence for that conviction equaled, but did not exceed, thirteen months.